While the complainant was engaged in assembling plots to make up its five hundred and fifty-six acre airport in West Caldwell, Essex, Angelo Rocco contracted in writing to convey his roadhouse, known as Fairfield Lodge, and two acres, within the airport, to Joseph Nestico for $12,000. That was May 31st, 1929. Seven days later, June 8th, Nestico assigned the contract to the complainant for $16,500. The bill is for the specific performance of the contract. The defense is fraud — that Nestico knew of the complainant's *Page 480 
enterprise and of its intention to purchase, and suppressed the facts and fraudulently represented to Rocco that he was purchasing for the tenant, Francovilla, for whom he was to add a dance hall to the roadhouse, and that he intended building dwellings on the remainder of the tract; that believing, and because of a heartfelt sympathy for the tenant, a fellow countryman, aroused by his pleading of hard luck and to give him a "break," Rocco entered into the contract with Nestico, to the use of the tenant, believing that he was taking title merely as security for the purchase-money and money advancements to be made later.
At the outset it may be said with assurance, that whatever induced the contract, it was not compassion for the compatriot. Rocco had never before met the tenant. The sentimental drama was played at the trial, for the court, not at the sale. Further, the representation of intention to build dwellings, if untrue, was harmless, immaterial. Rocco had no remaining lands to be benefited. If the representation can be said to be material to the security of a purchase-money mortgage he was to take, the offer of complainant to pay cash relieves the case of that issue.
The defense, however, is deeper and rests on concealment of a prospective and profitable resale plus misrepresentation. The legal proposition is, that though there was no duty imposed on Nestico to disclose the information, yet, in the language of Mr. Pomeroy, as applied to rescission of contracts: "If to the suppression of material facts within his knowledge, there is added any affirmative misrepresentation, even the slightest positive deviation from the truth tending to blind the eyes of the vendor, to draw away his attention from the actual condition of affairs, and thus to mislead him into making a sale at all to his disadvantage — even though there might be but a misguiding word — the contract procured in this artful manner could not pass the scrutiny of a court of equity; but would be avoided at the suit of the vendor." Pom. Eq. Jur. § 270.
It is established that one Wilson, a representative of a firm of realtors in Montclair, engaged in assembling the plots *Page 481 
for the airport, called on the tenant, Francovilla, and told him he had a buyer for the place, and that the tenant agreed to fetch the owner to his office. Neither price nor name of buyer was mentioned and there is no proof that Nestico or the tenant knew that the complainant was in the market. Wilson says the call was May 25th and that the tenant came to his office with Nestico May 31st. Francovilla says it was June 3d and that he accompanied Nestico to the office June 5th. The date of the call is all important. Rocco's case hangs on it. Wilson fixes the date by a memorandum, he says, he made on the May 25th page of a loose leaf calendar, and which, he says, he found, detached, shortly before the trial. On it is written "4 P.M. Yellow house. Asked for Owner Fairfield, N.J." He also fixes May 31st as the date the tenant called with Nestico by a memorandum on the loose leaf of the page of the calendar of that date which reads "Fairfield Lodge $20,000. J. Nestico. 57 Market St. Owner Aubion 0136." This memorandum is the eighth and last and at the bottom of the page. The pages are four by six inches. These memoranda are not authentic. Wilson fixed Nestico's call of May 31st as just before or about noon; and so does his secretary, but she is indefinite as to the date. That the call was close to midday on some day is unquestioned. At that hour on May 31st, Nestico was at Rocco's store in Orange, miles away, to have Rocco execute the contract. It is proved to a certainty. That the memo was not made coincident with a noontime call on May 31st, as it purports, is apparent from notations of time to four of the seven preceding entries, the last of which is marked "2:30 P.M." The notations may have been of appointment hours; but if the prior entries were of appointments why put down a call, and why is it the only one of a busy man's day, and why was a noontime call the last on the page? Nestico called, so Wilson admits, two or three times afterwards and there is no memo. There was nothing outstanding about the supposed call of May 31st, indeed there was less reason for noting that call than those later because upon that occasion there was a formal listing of the property and of all *Page 482 
the details. That official record would, perhaps, show the true date, but the card could not be found. One Tortoriello called at four o'clock of the same day Nestico was there, to dispute his ownership. Why was not this arresting event noted? Now, if the May 31st memorandum is false, what of the one of May 25th? It is the only one on the calendar page of that date. Why note that he, Wilson, called and why specify the hour and why the "asked for owner?" Why particularize this call and not a single memorandum of the many others he said he made and was unable to get in during the two weeks before? He had asked the borough clerk, who told him Rocco was the man he was looking for; and there is no memo and none that he "asked for owner." The writer of the May 25th memorandum seemingly had something more in mind than merely jotting down a reminder. Its needless detail is a telltale. Francovilla, the tenant, asserts that he first met Wilson on Monday, June 3d, and he marks it by a workwoman's presence whose cleaning-up day was Monday only; he ran a speakeasy. He says he gave Wilson's card to Nestico the next day when the latter came to make measurements for a dance hall; and Nestico confirms this. Both say it was the following day, June 5th, that they called on Wilson and they called a second time, on the sixth, when Wilson sent them to Mr. Sorg, the lawyer of the airport company. Wilson says they called two or three times. On the first occasion Nestico was dismissed somewhat abruptly when he asked $20,000. That, according to Wilson, was May 31st, and he averred he didn't see him again for ten days and then in Mr. Sorg's office; and when reminded that he had previously testified that Nestico had been in twice or more in the meanwhile he guiltily admitted the mistake, and said it was on the third visit, ten days after May 31st, that he sent Nestico to Mr. Sorg. Shifting from one untruth to another, he was again wrong, for it was on June 6th. There is this that comes from Wilson that proves him untruthful to the point of demonstration. Mr. Sorg took an option from Nestico on June 6th, and accepted it and entered into the contract with him on the eighth. *Page 483 
The dates are verified by the option and contract, in evidence. Wilson worked with a Mr. Maude, of the realty firm, who had charge and power to purchase for the airport company. Mr. Maude testified that he was on his way out, when he saw Nestico in the office with Wilson; that Wilson "wanted to know [of Nestico] if it [the property] was for sale and how much;" that the asking price was $20,000; that the thing came up naturally the next
day and that Wilson told him that after he, Maude, had gone out and after Nestico left, another man (Tortoriello) purporting to be the owner had been in, and that he, Maud, suggested to Wilson to send Nestico to Mr. Sorg. Wilson admits he followed the suggestion and when Nestico next called he was sent to Sorg. These circumstances correspond to a nicety to the Nestico-Francovilla testimony that their first call on Wilson was June 5th and the Sorg option of June 6th proves it beyond peradventure. Tortoriello's testimony, that he called after Decoration Day, and according to Wilson, four hours after Nestico left, and according to Maude, that the next day he directed Wilson to send Nestico to Sorg, and Sorg's option of June 6th, circumstantially supports the Nestico first calling date as June 5th. Tortoriello was on a prying mission for Rocco, who evidently meanwhile had heard of the airport project, and suspecting Nestico, sent Tortoriello to investigate. So he admits. The contract was signed at noon May 31st and it is hardly likely that Rocco heard of the airport and got in touch with Tortoriello in time to have him in Montclair four hours later. Wilson for the most part handled the truth with utmost carelessness and at time with noticeable abandon. He lost a fee and stood to make one if Rocco overthrew the contract, and he staggered blindly and desperately to help him. His testimony, on the salient facts, is unworthy of belief. The charge of concealment fails.
It was said at the outset that the representations, if made, were harmless and immaterial. However, the representation that Nestico intended to build a dance hall for the tenant, Francovilla, was not untrue. Francovilla sought to have a friendly landlord with a personal interest in his welfare. *Page 484 
Nestico had promised to add a dance hall to his readhouse for an attractive rental return; they had had it under discussion for weeks before Nestico bought. It was a business deal not unmixed with friendship; and Rocco understood. Rocco's claim that it was represented that Nestico was buying for the tenant stands denied by the two; it is refuted by his contract to sell to Nestico, and is altogether destroyed by Nestico's supposed other and conflicting representation that he intended building dwelling on the tract.
There will be a decree for the complainant. *Page 485